SIMON CONNER & another *vs.* CALVIN ATWOOD & others.

In 1854, a saw-mill, owned in common by the defendants, Atwood and one Moor, having been destroyed by fire, Atwood rebuilt the same under R. S. of 1841, c. 86, and in October, 1857, in consideration of the full value thereof, conveyed to the plaintiffs "one-half of the saw-mill privilege and all the mill, subject to the claims of Moor in said mill," and at the same time gave an obligation to procure a release from Moor or fully indemnify the plaintiffs for his claim. In April, 1859, not being able to obtain the release, Atwood gave the plaintiffs the bond in suit, referring to the conveyance conditioned to procure a release from Moor and save the obligees harmless from all claims by Moor or his assignees, and closing as follows: "and it is hereby agreed that the said obligees shall keep a full and correct account of the amount of lumber sawed in the mill, and the expense of all repairs on the mill, and at all times secure and afford to the said Atwood free access to the books of account … to enable him to settle his accounts and claims with said Moor, and procure his release." *Held*, that the last clause is not a condition precedent.

ON FACTS AGREED.

In 1853, a saw-mill, owned in common by the defendants, Calvin Atwood and one William Moor, was destroyed by fire. Moor refusing to assist in rebuilding, Atwood, in 1854, proceeded under R. S. of 1841, c. 86, and rebuilt the mill; and on Oct. 5, 1857, conveyed by deed of warranty to Simon Conner, John R. Wyman, and Samuel Gibson, jr., "one-half of the saw-mill privilege and all the saw-mill, subject to the claims of William Moor in said mill;" and at the same time gave his grantees (plaintiffs) an obligation to procure from Moor a quitclaim deed of his interest in the premises, or

indemnify them for Moor's claim. The consideration of the deed was the full value of the property. As a security for Atwood's fulfillment of his obligation, one of the notes given for the consideration of the deed was deposited in the hands of a third person, until Atwood should procure the release or give a bond of indemnity. On April 18, 1859, Atwood not having been able to procure the release, gave the bond in suit, being in the penal sum of one thousand dollars, and containing the following recitals, conditions, and agreements: " That whereas the said Atwood has heretofore, to wit, on the fifth day of October, A. D. 1857, bargained and sold to the said Conner, Wyman, and Gibson one undivided half part of a mill-privilege and mill, subject to the right of William Moor in the same. Now, therefore, if the said Atwood shall procure of, and deliver to, the said Conner, Wyman, and Gibson, their administrators or assigns, the full release and quitclaim of the said Moor to the said mill and privilege, and otherwise hold the said Conner, Wyman, and Gibson, and their assigns, harmless from any and all claims in any way lawfully created and attached to said mill and privileges by said Moor, or his assigns, then this obligation shall be void. And it is hereby agreed and understood that the said Conner, Wyman, and Gibson, are to and shall keep a full and correct account of the amount of lumber sawed in said mill, and the expense of all repairs upon said mill, and at all times shall secure and afford to the said Atwood free access to the books and evidences of such account, so far as the same may be necessary in the judgment of said Atwood to enable him, the said Atwood, to settle his accounts and claims with said Moor, or his assigns, and procure his or their release and quitclaim, as heretofore provided."

John R. Wyman subsequently conveyed his share to Conner and Gibson, assigned to them his interest in the bond and deed. Conner subsequently conveyed to Geo. H. Newhall his part of the property, and assigned to him his interest in the bond, and this action is prosecuted for the benefit of Gibson and Newhall. Newhall and Gibson claiming to hold possession of the mill, as against Moor, he brought a writ of entry against them, and for *mesne profits*, and re-

covered judgment for possession and for *mesne profits,* during the time of their occupancy (*Moor* v. *Gibson,* 53 Maine, 551), amounting to $430, which Gibson and Newhall had paid before the commencement of this action.

Atwood never procured any deed of release as stipulated in the bond, though often thereto requested before the commencement of this action, but did have due notice of the pendency of the real action above mentioned. . Gibson and Newhall procured a deed of release from Moor on March 11, 1868, and paid therefor $1,200.

It was admitted that one undivided half of the mill and privilege was worth more than one thousand dollars, at the date of the bond; and that the plaintiffs did not keep any account as mentioned in the bond, or render any account as requested.

The full court to render judgment according to the legal rights of the parties; and if the plaintiffs recover, the damages to be assessed by the judge of the superior court unless the parties agree.

*Davis & Drummond,* for the plaintiffs.

Defendants concluded by the judgment in *Moor* v. *Gibson. Portland* v. *Richardson,* 54 Me. 46. That the agreement to keep account, &c., not a condition precedent. 1 Chit. Plead. 320, 321. 1 Saunders, 320 c., note 3. *Boone* v. *Eyre,* in a note in 1 H. Blackstone, 273. *Campbell* v. *Jones,* 6 F. R. 579. *Davidson* v. *Gewynne,* 12 East, 389. *Ritchie* v. *Atkinson,* 10 East, 295, 558. *Stover* v. *Gordon,* 3 M. & S. 308. *Fothergill* v. *Walton,* 8 Taunt. 576. *Franklin* v. *Miller,* 4 Ad. & E. 599. *Stavers* v. *Curling,* 3 Bing, N. C. 355. *Dallman* v. *King,* 4 Bing. 105. *Newcomb* v. *Brackett,* 16 Mass. 161. *Phil., Del., & Balt. R. R. Co.* v. *Howard,* 13 How. 339. *Bennett* v. *Pixley,* 7 Johns. 249. *Tompkins* v. *Elliott,* 5 Wend. 496. *Dakin* v. *Williams,* 11 Wend. 70.

Damages being more than penal sum. of bond, judgment should go for penal sum and interest after six months, that being a reasonable time within which to obtain release.

*Bradbury & Bradbury,* for the defendants.

Whether or not the stipulation to keep an account, &c., is a condi-

tion precedent, does not depend upon the collocation of the phrases or of any formal words for that purpose, but upon the agreement as evidenced from the nature of the facts and the order of time when they are to be performed. *Hopkins* v. *Young*, 11 Mass. 302. *Mill-dam Foundery* v. *Hovey*, 21 Pick. 437. *Knight* v. *New Eng. Worsted Co.*, 2 Cush. 439. 2 Pars. on Con. 529.

The deed must be considered in connection with the stipulations in the bond. The mill was sold subject to Moor's claims. The right of action reserved is to be reimbursed for rebuilding under the mill act. *Moor* v. *Gibson*, 53 Me. 551. The stipulation as to the account of lumber sawed and expenses of repairs, was for the benefit of Atwood in reference to his right of action. It was to be kept by the plaintiffs and furnished Atwood, to " enable him to settle with Moor," &c. The settlement and procuring of the release was dependent upon the keeping of the account. It was essential to Atwood's settlement. No settlement could be made without it. Upon this settlement depended the amount of Moor's claim, from which Atwood had bound himself to save the obligees harmless. This account necessarily preceded the performance of the condition, and hence was a condition precedent without express words to that effect. *Mill-dam Foundery* v. *Hovey*, 21 Pick. 439. *Caldwell* v. *Blake*, 6 Gray, 402. *Hubbell* v. *Flint*, 13 Gray, 277.

DICKERSON, J. DEBT on bond. In 1853, the defendants, Calvin Atwood and one William Moor were owners of the saw-mill and privilege mentioned in the bond, each owning an undivided half thereof. The mill was burned, and Moor, refusing to assist in rebuilding it, Atwood rebuilt the same in 1854, claiming to proceed under chap. 86 of the R. S. of 1841.

On the fifth day of October, 1857, Atwood conveyed to Simon Conner, John R. Wyman, and Samuel Gibson, jr., the obligees in the bond, by deed of that date, " one undivided half of the saw-mill privilege and saw-mill, meaning to convey one-half of the saw-mill privilege, and all the mill subject to the claims of William Moor on said mill, and reserving to himself all claim and right of action against the said Moor which he then had."

On the day this deed was given, Atwood gave the grantees an obligation to procure from Moor a quitclaim deed of his interest in the premises for their benefit, or to fully indemnify them for Moor's claim. Failing to obtain Moor's release, Atwood, on the eighteenth day of April, A. D. 1859, in compliance with the terms of the other alternative in his obligation, gave the bond in suit in the penal sum of one thousand dollars, referring to the deed of Oct. 5, 1857, and conditioned " to procure and deliver to the obligees (who were the grantees in that deed), the full release and quitclaim of the said Moor to the saw-mill and privilege, and otherwise hold the said obligees and their assigns harmless from any and all claims in any way lawfully created, and attached to said mill and privilege by said Moor, or his assigns."

This bond, also, contains the following provision, immediately succeeding the words, " then this obligation shall be void," " and it is hereby agreed and understood, that the said Conner, Wyman, and Gibson are to and shall keep a full and correct account of the amount of lumber sawed in said mill, and the expense of all repairs upon said mill, and at all times shall secure and afford to the said Atwood free access to the books and evidences of account so far as the same may be necessary, in the judgment of the said Atwood, to enable him, the said Atwood, to settle his accounts and claims with said Moor, or his assigns, and procure his or their release and quit-claim, as heretofore provided."

One of the grantees of the deed, and the assignee of the other grantee being in possession of the premises, Moor brought a writ of entry and for *mesne profits* against them, recovered judgment against them for possession, and damages in the sum of four hundred and thirty dollars, which sum was paid by them before the commencement of this suit, as was, also, the sum of twelve hundred dollars, expended by them to procure Moor's release. One undivided half of the mill and privilege was worth more than one thousand dollars when the bond was given. The plaintiffs did not keep any account as stipulated in the bond, nor render any when requested.

The defendants contend that the covenant of the plaintiffs to keep an account, is a condition precedent to their covenant to release the estate from incumbrances; and that not having kept their covenant, the plaintiffs are not in a situation to take advantage of a breach by the defendants. The question is thus presented, whether the mutual stipulations in the bond are dependent, requiring the plaintiffs to show performance, or a tender, or a readiness to perform; or independent, not requiring an actual performance, or tender. The rule laid down by Lord Mansfield in *Boone* v. *Eyre*, 2 W. Bl. 1312, which has been acknowledged and affirmed by the highest courts in England and this country, is, that where mutual covenants go to the whole consideration on both sides, they are dependent covenants, the one being precedent to the other. But where they go only to a part, and a breach may be paid for in damages, the defendant has a remedy on his covenant, and cannot plead it as a condition precedent. *Storer* v. *Gordon*, 3 Maule & Selw. 308. *Tileston* v. *Newell*, 13 Mass. 406. *Thompkins* v. *Elliot*, 5 Hend. 496.

When the act of one party must necessarily precede the act of the other party in the order of performance, it will constitute a condition precedent; but when the act of the one is not necessary to the act of the other, though it would be convenient, useful, or beneficial, the performance of the one is not a condition to the obligation to perform by the other, as the want of it does not prevent performance, and the loss and inconvenience can be compensated in damages. *Stavers* v. *Curling*, 3 Bing. New Rep., 355. *Atkinson* v. *Ritchie*, 10 East, 295–530.

Whether a covenant be of the former or latter description, dependent or independent, depends upon the reason and sense of the thing as it must have been understood by the parties, taking the whole contract into consideration. The conditions in the bond are preceded by reference to the deed of Oct. 5, 1857, thus making that transaction, in the minds of the parties, the moving cause for executing the bond. Though the plaintiffs by that deed acquired title to only a moiety of the mill and privilege, they actually paid

for the whole, taking an obligation from the grantor, Atwood, to indemnify them against Moor's claim to the other half. In the event of Atwood's failure to procure Moor's release, that obligation required him to secure the grantees against Moor's claim; and the bond in suit was given upon the happening of that contingency. The consideration paid for the deed was, therefore, the consideration for the bond also. In giving the bond in suit, the principal defendant, Atwood, incurred no new liability; he simply substituted his bond with sureties for his individual obligation previously given. Nor did the plaintiffs acquire any new rights against Atwood by accepting the bond. There is, moreover, nothing in the case to show that the defendant, Atwood, had any right to exact of the plaintiffs the stipulation to keep and tender an account; or, in other words, that such a clause was contemplated in the obligation for which the bond was substituted.

Viewing the transaction in the light of these antecedent facts, the parties would naturally be expected to make the procurement of Moor's release by the obligors, the first and principal thing to be done. The plaintiffs had previously paid for this release, and took the bond to make sure its forthcoming. Accordingly we find this stipulation inserted in the first clause of the conditions of the bond. Taken in connection with the further obligation to save the plaintiffs harmless from Moor's other claims on the property, this makes a complete instrument, fully conforming to the requirements of the obligation for which it was substituted, and concluding with the formal words, " then this obligation shall be void."

No further act was necessary to be done by the plaintiffs to entitle them to demand performance of the defendants' covenants. The obligation to keep an account is not the consideration for performing these covenants, the plaintiffs having long previously paid the defendants for entering into these stipulations. No such apt words as " if," " on condition," or " provided that" the obligees shall keep an account, are used to indicate that the performance of the covenants of release and indemnity depends upon the plaintiffs' keeping an account. Nor was the keeping of an account

necessary to enable the defendants to perform their covenants. Such account might have been convenient and useful to the defendants in settling their claims with Moor, but it was, by no means, indispensable for that purpose ; and the loss and inconvenience, if any, sustained by them on account of the breach of this stipulation, can be compensated in damages in another action. The covenant to keep an account does not go to the whole consideration, and is not, therefore, a condition precedent to the other covenants. *Knight* v. *N. E. Worsted Co.*, 2 Cush. 287.

The plaintiffs, at least, it would seem, acted upon this theory, as it is scarcely probable that they would have omitted to perform so inconsiderable a task as keeping an account, if they had supposed that their failure to do so would defeat their right of action or the defendants' covenants.

The view we have taken is, moreover, in harmony with the equities of the case, as it is not pretended that the defendants suffered any damage by reason of the plaintiffs' failure to keep an account, since whatever claim Atwood had against Moor for reimbursement of expenses for rebuilding the mill, he lost by separating his lien from his security by means of this same conveyance. *Moor* v. *Gibson*, 53 Maine, 551.

*Judgment for Plaintiffs.*

Damages not exceeding the penal sum on the bond to be assessed by the judge of the superior court, unless agreed upon by the parties.

Appleton, C. J.; Walton, Barrows, and Danforth, JJ., concurred.